POSTED ON THE WEBSITE
<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

**FRANK LANE**,

        Debtor.

      )  Case No. 11-63503-B-7
      )
      )
      )
      )
      )
      )

JEFFREY CATANZARITE FAMILY
LIMITED PARTNERSHIP, a Nevada
limited partnership; ERON
MARTIN; WOLFGANG GREINKE, as
TRUSTEE OF THE GREINKE FAMILY
TRUST; WESLEY LARSEN; BRIAN
HICKS, as TRUSTEE OF THE HICKS
FAMILY TRUST UDT 10/01/2001;
STEVEN NAZAROFF, individually
and as TRUSTEE OF THE STEVEN
NAZAROFF RETIREMENT TRUST; THE
NAZAROFF FAMILY PARTNERSHIP, a
California General Partnership;
TRICIA PRENTICE; ROBERT
STROHBACH, as TRUSTEE OF THE
STROHBACH LIVING TRUST; CATHY
GALIE-LEWIS; LEASON V. "CHET"
LEEDS, as TRUSTEE OF THE LEASON
V. LEEDS TRUST; LYNAE ARNOLD;
LIZ MALONE, as TRUSTEE OF THE
MALONE FAMILY TRUST,

        Plaintiffs,

v.

FRANK LANE,

        Defendant.

      )  Adv. Proceeding No. 12-1053
      )
      )  DC No. CHC-1
      )
      )  Date: August 19, 2020
      )  Time: 11:00 a.m.
      )  Department B, Judge Lastreto
      )  Fifth Floor, Courtroom 13
      )  2500 Tulare Street, Fresno, CA

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

One October morning in eastern Cuba about 150 years ago, plantation owner and lawyer Carlos Manuel de Cespedes rang a bell-a normal occurrence-to summon his slaves.  But this day was different. Followers numbering 147 gathered and Cespedes gave an impassioned address declaring this the first day of Cuba's independence from Spain.  So inspired were his followers that rebels armed themselves and combatted Spanish forces.  The ensuing war is called "The Ten Years' War."  Many but no decisive battles were fought. After ten years, rebel division and Spanish exhaustion led to the "Antebellum Pact of Zanjon" which temporarily ended the hostilities.  Cuba was not independent and any concessions she received quickly waned.  More wars were yet to be fought before Cuba gained its independence from Spanish rule 20 years after the end of "The Ten Years' War."[1]

Though the tactics are different, we have a "Ten Years' War" here.  This litigation has lasted the length of the first Cuba/Spain conflict.  It has also resulted in no decisive battles given the challenges and appeal described below.  Another commonality: the indefatigable enmity both sides demonstrate.  But conflicts eventually end.  This one should now.

Plaintiffs ask the court for summary judgment pursuant to Federal Rule of Civil Procedure 56 (made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056) against Defendant determining that Plaintiffs' fraud claim is non-dischargeable under 11

---

[1] Lennon, Troy, "Cubans rose up against Spain in first war for independence," October 10, 2018, dailytelegraph.com.au/news/day-in-history/Cubans-rose-up-against-spain-in-first-war-for-independence/news-story/5ff6afb075ba8aa402d93129c2828ccl

U.S.C. § 523(a)(2)(A) and for authorization to enforce the state court fraud judgment.[2]  Doc. #115.  After careful consideration of the record, the motion will be granted.

**BACKGROUND**

Pre-Bankruptcy Litigation

About fourteen years ago, twenty individuals, trusts and partnerships spent $2.4 million to purchase different member interests in ArmorLite LLC.[3]  ArmorLite's president and CEO was Frank Lane Italiane, Jr. ("Frank Lane," "Lane," or "Defendant").  The plaintiffs' claim that Lane represented that though ArmorLite was a fledgling company, it had developed a patented high-tech roofing system based on a PVC/ABS resin that achieved a "Class A" fire rating.  Lane also allegedly represented that the system was commercially marketable.  After investing the $2.4 million, the plaintiffs claim they were bilked since the system was not as represented.

The prototypes of the system did have a "Class A" rating and were successfully installed on certain buildings but, the plaintiffs claim, the proper formula for the resin could not be mass produced.  So, ArmorLite surreptitiously changed the formula and the modification

---

[2] Future references to the Federal Rules of Civil Procedure will be noted by "Civil Rule." Future references to the Federal Rules of Bankruptcy Procedure will be noted by "Rule."

[3] These entities became plaintiffs in California Superior Court litigation and this adversary proceeding.  They are: Jeffrey Catanzarite individually and for Jeffrey Catanzarite Family Limited Partnership, Brian Hicks individually and as Trustee of the Hicks Family Trust UDT October 1, 2001, Steven Nazaroff individually and as Trustee of the Steven Nazaroff Retirement Trust and for Nazaroff Family Partnership, Tricia Prentice, Eron Martin, Cathy Galie-Lewis, Robert Strobach individually and as Trustee of the Strobach Living Trust, Wolfgang Greinke individually and as Trustee of the Greinke Family Trust, Wesley Larsen, Leason Leeds individually and as Trustee of the Leason V. Leeds Trust for Lynae Arnold, Liz Malone and the Malone Family Trust  (collectively "Plaintiffs").

never received the "Class A" rating.  The system thus had no commercial market value.  Further, there was no patent for the system. Plaintiffs claim they were never told these facts.

In the fall of 2008, Lane suffered a severe stroke.  He partially recovered but endured a very lengthy cognitive convalescence.  He stepped down as CEO and president of ArmorLite.  Some of the plaintiffs became directors of ArmorLite and elected to put ArmorLite in bankruptcy in May 2009.

Eight months later, the plaintiffs filed a complaint in the Superior Court of California for Los Angeles County ("Superior Court" or "state court") against Lane and others.  The plaintiffs sought damages of $2.4 million alleging securities fraud, fraud, fraudulent nondisclosure, negligent misrepresentation, and conspiracy to commit fraud.  The complaint was amended several months later.  For reasons that will soon be clear, the fourth cause of action in the amended complaint for fraudulent concealment is the focus of this motion.  In addition to incorporating background allegations, the cause of action alleged:

- Lane had a duty to disclose material facts to the plaintiffs.

- Lane secretly changed the formula of the product such that it would not receive a "Class A" rating and therefore be of little value on the commercial market.

- No part of the changed formula was patented.

- Lane knew or had reason to know this information was unknown by the plaintiffs and was material to their decision to purchase the interests in ArmorLite.

- Lane withheld this information without any reasonable justification to induce plaintiffs to purchase the interests and otherwise act to the detriment plaintiff's interests.

- When the plaintiff's acquired their interests and took other actions to their detriment they were ignorant of the facts withheld and could not, in the exercise of reasonable diligence, have discovered the nondisclosures.

- In reliance on the undisclosed facts, the plaintiffs invested $2.4 million in acquiring the interests in ArmorLite.  They would not have invested had they known the true facts.  The plaintiffs justifiably relied on Lane since, he represented, he was expert in the roofing industry and had superior knowledge of the existence of the true facts.

- The fraud was not discovered until May 2009 in connection with the decision to file bankruptcy for ArmorLite.  Then, Lane and the other defendants disclosed that the roofing material they were going to market did not have the "Class A" fire rating nor passed the necessary tests.

- As a proximate result, plaintiffs were damaged in the amount of $2.4 million.[4]

Litigation ensued in earnest.  Discovery was pursued including numerous depositions.  That is until December 2011 when Lane filed this Chapter 7 bankruptcy case.

Initial Bankruptcy Litigation

Four months after the bankruptcy petition, a complaint starting this adversary proceeding was filed.  The complaint was amended seven months later.  About one month after that, the bankruptcy court, *sua sponte,* abstained from hearing the adversary proceeding because of the pending state court litigation.  The court also ordered the adversary proceeding administratively closed and modified the automatic stay permitting the state court litigation to proceed to a final judgment. The court's order also stated the court may apply collateral estoppel if the adversary proceeding resumed.

---

[4] Lane filed a cross-complaint alleging many claims including that the plaintiffs "looted" ArmorLite in connection with the decision to place ArmorLite in bankruptcy.  The cross complaint was dismissed with prejudice during the state court trial.

Nine months later, the plaintiffs asked the state court to summarily adjudicate their fraud claims against the defendants. The motion was denied because there was a material issue of fact whether any of defendant's representations were material. Two years later, trial began in the Superior Court.

State Court Trial and Post Judgment Proceedings

Trial began in the Superior Court on September 21, 2015, without a jury. The next 25 trial days were mired in difficulty. Lane claims he suffered severe stress — complicating his stroke convalescence — requiring at least one recess for a few days. Lane's counsel also suffered stress leading to a recess. Despite these problems, numerous witnesses testified including experts for both sides.

During the trial, Lane and the plaintiffs had settlement discussions. This culminated on October 16, 2015 in a hand-written settlement agreement signed by Lane and those plaintiffs present. The agreement was put on the record before the state trial court. In sum, the agreement provided:

- Lane agreed to a stipulated judgment against him in favor of plaintiffs for "fraudulent concealment" in the amount of $1.5 million. This amount was to be allocated among the plaintiffs depending on the amount of their investments.

- Lane stipulated to an order for the bankruptcy court that the judgment is not dischargeable in his pending bankruptcy proceeding.

- The stipulated judgment would not be filed for one year.

- All parties agreed to bear their own attorney's fees and costs.

- Plaintiffs agreed not to collect or attempt to collect funds Lane was and would be entitled to as author of "Be In Heaven

Now." If that book is split into other titles, this restriction includes those books.

- The parties intend the hand-written short form to be binding though the parties contemplate a long form agreement after the settlement was put on the record.

- The state court retained jurisdiction to enforce the agreement under Cal. Code Civ. Proc. § 664.6.

- The agreement would be confidential unless and until the stipulated judgment is entered.

The state trial judge was very careful at the hearing announcing the settlement to underscore the binding effect of the agreement. She began by requiring plaintiff's counsel's assurance that he could speak for those plaintiffs not present. She then asked Lane if he understood he cannot "back out . . . unlike the last time." Lane said he understood. The court also asked if Lane was under duress and explained what is meant by "duress." Lane asked if the terms of settlement could include a condition that the action would be dismissed if he could rectify "the problem." When the court asked counsel, they said it was not part of the agreement.

After a colloquy with Lane and his counsel, the trial judge recessed proceedings so Lane and his counsel could discuss this issue. When the parties returned, the court asked Lane if he was under duress; he said he was not. The court also isolated the condition Lane discussed before the recess; Lane confirmed he no longer required the condition in the settlement. Lane asked to read the written agreement; the court allowed Lane that time. The court again asked if Lane understood the agreement; he said he did. The court reiterated the agreement is binding, even if Lane refused to sign the "long

form."[5]  Lane agreed. Doc. #140.  All plaintiffs present also agreed to the terms on the record.

The litigation was not over.  Seven months later, Lane, without counsel, filed a motion to vacate the settlement agreement.  He claimed he had mental defects at the time of the settlement which were exacerbated by the stress of the trial and unrelated family issues. He claimed he thought he was going to have another stroke unless he settled the case.[6]  He offered the testimony of a physician who opined that Lane had a neurocognitive disorder related to his earlier stroke. These issues prevented his legal consent, Lane argued.  He also blamed his trial counsel.

The trial judge was unconvinced.  Lane's motion to vacate was denied.  The trial judge noted that she observed during the settlement hearing that Lane understood and appreciated the consequences of the settlement.  She also cited her personal perceptions and observations of Lane during the trial including his assistance of his trial counsel.  She also discounted the medical testimony as dated and related to memory loss; not cognition issues preventing legal consent. She found no admissible evidence of a mental deficiency.  She reiterated Lane "clearly understood" what was happening when she questioned him at the hearing.

A month later, Lane appealed the ruling on the motion to vacate to the California Court of Appeal.[7]  Two years later, the trial court's decision was affirmed, and a remittitur issued.

---

[5] The court has not been provided a "long form" agreement, and plaintiff's counsel stated on the record at the hearing held on July 15, 2020 that no "long form" agreement was ever prepared.

[6] There is evidence that Lane had threatened further litigation against the plaintiffs contemporaneously with his motion to vacate.

[7] While the appeal was pending, a previously scheduled status conference was held in the adversary proceeding before this court.  The status conference was dropped from calendar because of the pending appeal.

Interim Return to Bankruptcy Court

In late July 2019, about one year after Lane lost his appeal, Lane filed a motion asking the bankruptcy court to dismiss this adversary proceeding for lack of prosecution. The motion was denied.

The state court was leery of entering the stipulated judgment without further stay modification. So, about a week after the dismissal motion was denied, the bankruptcy court entered an order on plaintiff's motion allowing the state court to enter judgment.

State Court Judgment

In November 2019, the plaintiffs filed a motion in the state court to enter the judgment under the stipulation reached four years before. Lane opposed, raising the same arguments offered in support of his unsuccessful motion to vacate.

Once again, the trial judge was unconvinced. The motion to enter judgment was granted. The judgment was entered on January 7, 2020. The judgment is on a Judicial Council of California Form "JUD-100." It is against the debtor "On Stipulation." The Judgment states:

> "Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and the stipulation was stated in open court. The stipulation was stated on the record."

Doc. #140. The judgment entered is against defendant in the amount of $1,500,000. The judgment also contains these terms:

> Judgment is for Fraudulent Concealment (Fourth Cause of Action). It is intended that this Judgment is not dischargeable in Defendant's Chapter 7 case (USBC No 11-63503-B-7). The Parties stipulated to an order for the Bankruptcy Court that this Judgment is not dischargeable. This Court shall retain jurisdiction under [California] Code of Civil Procedure Section 664.6.

<u>This Motion for Summary Judgment</u>

     The parties return to this court after the plaintiffs filed this motion for summary judgment on June 1, 2020.  Plaintiffs claim that the stipulated judgment should be given preclusive effect, and thus there can be no genuine issue as to any material fact.  Doc. #117. Plaintiffs urge that all elements under California's law of issue preclusion have been met.  Under the circumstances of entry of the judgment under the stipulation, plaintiffs contend, the judgment is final and on the merits.  Thus, the $1.5 million judgment should be non-dischargeable under § 523(a)(2)(A).

     Defendant admits he entered into the settlement agreement and only disputes three "elements" of issue preclusion: fraudulent concealment was neither actually litigated, nor necessarily decided in the state court with entry of the stipulated judgment; lack of proof of proximate causation for plaintiff's damages evidences that the issues were not litigated in state court. Defendant also contends his cognitive memory and executive decision impairments would preclude his consent that the debt is non-dischargeable.  So, the public policy effects of issue preclusion do not support summary judgment. Defendant finally claims his trial counsel was ineffective.

     Lack of bankruptcy counsel and the state court's claimed failure to highlight the non-dischargeable element of the settlement agreement, defendant contends, preclude summary judgment.

     Plaintiffs' reply stresses the complete record that was before the state trial court before the settlement was reached. Also, plaintiffs distinguish most of defendant's authorities as not applicable to this matter: a pending non-dischargeability case as the state court action was tried and settled.  The state

trial court's ruling denying defendant's motion to vacate the settlement affirmed on appeal, notes plaintiffs, shows the issue of defendant's cognitive abilities has already been considered and found not to have affected his consent to the settlement.[8]

## JURISDICTION

The United States District Court for the Eastern District of California has jurisdiction of this matter under 28 U.S.C. § 1334(b) because this is a civil proceeding arising under title 11 of the United States Code. The District Court has referred this matter to this court under 28 U.S.C. § 157(a). This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(I). As such this court may enter orders finally adjudicating this matter.

## ANALYSIS

1. Summary Judgment Standards

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Civil Rule 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[8] At the continued hearing on this motion on August 19, 2020, counsel for the plaintiffs, Ms. Callari, asked for time to submit the transcript of the state court trial for the morning of October 16, 2015. This was apparently the session immediately before the settlement hearing. Over defendant's objection, the court granted the request giving Ms. Callari through September 4, 2020 to submit the transcript. If submitted, counsel for Lane could file a response, if any, on or before September 11, 2020. No transcript was filed so the matter was deemed submitted September 4, 2020. (Doc. 197). Ms. Callari filed a declaration four days later stating the transcription service "inexplicably has been unable to provide the transcript of the October 16, 2015 morning session" of the state court trial. (Doc. 201).

requirement is that there be no *genuine* issue of *material* fact."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where
the record taken as a whole could not lead a rational trier of fact to
find for the nonmoving party, there is no 'genuine issue for
trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986). "As to materiality, the substantive law will
identify which facts are material. Only disputes over fact that might
affect the outcome of the suit under the governing law will properly
preclude the entry of summary judgment." *Anderson*, 477 U.S. at
248. "[W]hile the materiality determination rests on the substantive
law, it is the substantive law's identification of which facts are
critical and which facts are irrelevant that governs." *Id.*

       Once a summary judgment motion is properly submitted, the burden
shifts to the non-moving party to set forth specific facts showing
that there is a genuine material issue for trial. *Barboza v. New
Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citing
*Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir.
2002)). The non-moving party "may not rely on denials in the
pleadings but must produce specific evidence, through affidavits or
admissible discovery material, to show that the dispute exists."
*Barboza*, 545 F.3d at 707 (citation omitted). If the non-moving party
fails to make this showing, the moving party is entitled to judgment
as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986).

       We apply these principles narrowly here. The issue is the
preclusive effect of the stipulated judgment entered in the state
court proceeding on this dischargeability case.

2. Issue preclusion (collateral estoppel) issues

Principles of collateral estoppel apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a). Grogan v. Garner, 498 U.S. 279, 284 n. 11(1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).

In California, "[c]ollateral estoppel precludes re-litigation of issues argued and decided in prior proceedings." Lucido v. Superior Court, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990) (en banc). California courts will apply collateral estoppel only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. See id. at 1225, 1226. There are five threshold requirements:

> (1) the issue sought to be precluded from re-litigation must be identical to that decided in a former proceeding.
>
> (2) the issue must have been actually litigated in the former proceeding.
>
> (3) the issue must have been necessarily decided in the former proceeding.
>
> (4) the decision in the former proceeding must be final and on the merits.
>
> (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

In re Harmon, 250 F.3d 1240, 1245 (9th Cir. 2001).

The plaintiffs here have the burden of proving all the requisites for application of issue preclusion. Zuckerman v. Crigler (In re Zuckerman), 613 B.R. 707, 713 (9th Cir. BAP 2020)[9] (citing Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995)).  That burden requires the plaintiffs to introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the previous action.  In re Zuckerman, 613 B.R. at 713.  Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion.  Id. at 714.  The record here reveals the extent of the litigation, the care of the state court trial judge in making a record that the debtor knew and understood the consequences of the agreement, the legal basis for the judgment agreed upon by the parties, and debtor's capacity to enter into the stipulated judgment. Cf. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382-84 (9th Cir. BAP 2011) (insufficient record given to bankruptcy court to determine what issues jury decided in underlying state court litigation).  As will be seen there is no reasonable doubt about what was decided by the parties and the court in the state litigation.

3.  Application of issue preclusion supports summary judgment

Generally, stipulated judgments in California are afforded claim preclusive effect, but not issue preclusive effect.  The reason is that these judgments are the product, not of litigation but of negotiation."  Yaikian v. Yaikian (In re Yaikian), 508 B.R. 175, 179 (Bankr. S.D. Cal. 2014).  "[U]nless the state court record reflects that it considered evidence of the wrongdoing at issue, the substantive issues are neither actually nor necessary decided by the

---

[9] Zuckerman is on appeal to the Ninth Circuit (No. 20-60031(9th Cir.))

state court." Id. But see Needelman v. DeWolf Realty Co., 239 Cal.
App. 4th 750, 759, 191 Cal. Rptr. 3d 673, 682 (2015), as modified on
denial of reh'g (Aug. 18, 2015) ("[u]nder California law, a 'judgment
entered without contest, by consent or stipulation, is usually as
conclusive a merger or bar as a judgment rendered after trial."
(citations omitted) (the court finding that the non-moving party
"cannot now relitigate claims within the scope of the stipulated
settlement; claims that *could* have been litigated in the unlawful
detainer action are now barred").

  For purposes of issue preclusion, the California Supreme Court
has observed that there is a difference between stipulated judgments
entered under California Code of Civil Procedure ("CCP") § 664.6 —
which occurred here — and compromise settlements entered under CCP
§ 998. In re Boyce, No. 8:14-AP-01134-CB, 2016 WL 6247612, at *4 at
n.3 (9th Cir. BAP Oct. 25, 2016) (citing Cal. State Auto. Ass'n Inter-
Ins. Bureau, 50 Cal. 3d at 664 & n.3). Entry of a stipulated judgment
is subject to the discretion of the trial court, and, thus, such a
judgment is properly subject to issue preclusion. Id. at *4. This is
because, under appropriate circumstances, the stipulated judgment is
considered akin to a judgment entered after a trial on the merits of
the proceeding. Id. at *3.

  In Boyce, the stipulated judgment expressly said it was
enforceable pursuant to CCP § 664.6. Id. at *4. As a result, the
stipulated judgment was an appropriate basis for a potential
application of issue preclusion - it satisfied the "actually
litigated" requirement. Id. at *4.

  The stipulated judgment here should be given preclusive effect.
Only the second and third elements of California's issue preclusion

law are disputed in this motion ([the issue] must have been actually litigated in the former proceeding; and [the issue] must have been necessarily decided in the former proceeding). Defendant's argument that because the plaintiffs did not prevail on their summary judgment motion at the state level shows there is a genuine issue of material fact is not persuasive here since the parties eventually went to trial after extensive discovery, including depositions. Many witnesses testified over the 25-day trial in Superior Court. The state court's order denying the summary adjudication motion simply meant the case needed to be tried. Tried it was. The issue is whether the stipulated judgment entered here satisfies the elements of issue preclusion. It does.

The "actually litigated" element of issue preclusion is satisfied. The judgment itself references the fourth cause of action: fraudulent concealment. The elements of fraudulent concealment in California mirror those necessary for a non-dischargeablility judgment under § 523(a)(2). See, In re Zuckerman, 613 B.R. at 714. Compare Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) with American Express Travel Related Services Co. Inc. v Hashemi (In re Hashemi), 104 F. 3d 1122, 1125 (9th Cir. 1996). Those elements are:

- Misrepresentation; fraudulent omission or deceptive conduct by the debtor,

- Knowledge of the falsity or deceptiveness of his statement or conduct,

- An intent to deceive,

- Justifiable reliance by the creditor on the debtor's statement or conduct, and

- Damage to the creditor proximately caused by reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n V. Slyman (In re Slyman), 234
F.3d 1081, 1085 (9th Cir. 2000); Oney v. Weinberg (In re Weinberg),
410 B.R. 19, 35 (9th Cir. BAP 2009), aff'd 407 Fed. Appx. 176 (9th
Cir. 2010).

     The court is not presented with a detailed element analysis here.
The motion for summary judgment asks the court to give preclusive
effect to a state court stipulated judgment reached during a trial of
a fraudulent inducement claim.  This adversary proceeding was pending
when the stipulated judgment was agreed upon by the debtor.  The
stipulation itself and the judgment later entered states the parties'
intention to make the judgment binding in this bankruptcy case.  The
judgment specifically states it is on the fourth cause of action:
fraudulent inducement.  The allegations contained in the operative
state court complaint are sufficient for a fraudulent concealment
finding.  See Martin v. Hauck (In re Hauck), 489 B.R. 208, 214 (D.
Colo. 2013) aff'd 541 F.Appx. 898 (10th Cir. 2013).

     The "necessarily decided" element is also met here.  If "parties
stipulate to the underlying facts that support a finding of non-
dischargeability, the [s]tipulated [j]udgment [is] entitled to
collateral estoppel effect." Hayhoe v. Cole (In re Cole), 226 B.R.
647, 655 (9th Cir. BAP 1998) (citing Klingman v. Levinson, 831 F.2d
1292, 1296 n.3 (7th Cir. 1987).  The judgment here is not vague as to
its' basis or ambiguous as to legal theory relied upon.  The judgment
is supported by a complete record.  When entered, the stipulated
judgment was on the fraudulent concealment cause of action.  The
debtor agreed to that provision in the stipulated judgment.  Cf. In re
Wlodarczyk, 604 B.R. 863, 870-71 (S.D. Cal. 2019) (affirming
bankruptcy court's finding that issue preclusion was inapplicable

because "stipulated judgment references no facts in relation to the fraud claim"). In effect, the debtor here admitted the facts supporting the judgment by agreeing to have a judgment entered on the fourth cause of action. This adversary proceeding was pending when the stipulated judgment was agreed upon.[10]

These facts distinguish this litigation from contrary authority. See Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1178 (9th Cir. 2002) (pre-petition settlement agreement including stipulated judgment and waiver of bankruptcy protection not given issue preclusive effect because settlement resolved non-fraud claims, no facts of fraud mentioned in agreement or judgment, defendant/debtor made no fraud admission); In re Cole, 226 B.R. at 656 (pre-petition stipulated judgment in state court action on promissory note. The condition that the debt was non-dischargeable held to be an unenforceable waiver of discharge); Yaikian v. Yaikian (In re Yakian), 508 B.R. 175, 181-85 (Bankr. S.D. Cal. 2014) (CCP § 998 "stipulation had no intended impact outside of a future bankruptcy since the state court action was dismissed" debtor defaulted under stipulation]; Wank v. Gordon (In re Wank), 505 B.R. 878 (9th Cir. BAP 2014) (reversing summary judgment where declaration prepared contemporaneously with the pre-petition settlement stating facts supporting non-dischargeability raised factual issues as to debtor's state of mind and creditor's motives).

Another reason issue preclusion applies here is the manifest intent of the plaintiffs and the defendant evidenced by the judgment

---

[10] In Johnson v. W3 Investment Partners (In re Johnson), SC-17-1194-LBF, 2018 WL 1803002 (B.A.P. 9th Cir. April 16. 2018), the Bankruptcy Appellate Panel affirmed the bankruptcy court holding that a pre-petition stipulated judgment could be given issue preclusive effect when the settlement agreement (though not the resulting judgment) contained admissions as to fraud liability.

and the relevant record.  Consent judgments "ordinarily occasion no *issue preclusion* . . . unless it is clear . . . that the parties intend[ed] their agreement to have such an effect."  <u>Arizona v. California</u>, 530 U.S. 392, 414 (2000).  A stipulated judgment "may be given preclusive effect if that was the intent of the parties.  The intent of the parties can be inferred either from the judgment or the record."  <u>Berr v. FDIC (In re Berr)</u>, 172 B.R. 299, 306 (9th Cir. BAP 1994) (citations omitted).  <u>See also</u>, <u>Gilbert v. Ben-Asher</u>, 900 F.2d 1407, 1410 (9th Cir.) <u>cert.</u> <u>denied</u> 498 U.S. 865 (1990) (judgment by stipulation was held to be conclusive if the parties have entered an agreement manifesting such intention), and Restatement (Second) of Judgments §27 cmt. e ("judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention").  Both the "four corners" of the judgment and the record show the parties' intention to make the fraudulent concealment judgment preclude re-examination of the elements in this adversary proceeding.

The judgment for $1.5 million here is explicit.  Doc. #140.  It says:

1.   It is for Fraudulent Concealment (Fourth Cause of Action).

2.   It is intended to be not dischargeable in this specific chapter 7 case (the case number is referenced).

3.   That the parties stipulated that the judgment would be non-dischargeable.

Additionally, the judgment incorporates as an exhibit the transcript of the hearing when the settlement was approved.  The transcript reveals all parties' concurrence with the terms.

The extensive record also manifests defendant's intent that the judgment be given preclusive effect. This bankruptcy case was pending when the trial occurred and when it was settled. Defendant was represented by counsel at the trial and during settlement discussions. Defendant and his counsel negotiated the settlement outside the presence of the trial court. Defendant signed the settlement agreement that was read into the record. The trial court extensively questioned defendant on the record establishing he was not under duress. The trial court asked if defendant understood he could not "back out;" he agreed. The trial court recessed proceedings so defendant could speak with his counsel about a potential condition to the agreement. After the recess defendant said he wished to "go forward" with the agreement and stipulated judgment. The fraudulent concealment cause of action is the only basis for the judgment against defendant mentioned in the proceedings. Defendant agreed the debt would be non-dischargeable "in his bankruptcy action." Defendant was given another chance to read the agreement he had signed. He did. He affirmed he re-read and accepted the agreement.

Defendant's declaration in opposition to this motion does not deny any of the above facts. Doc. #173. He concedes he entered into a settlement agreement and consented to entry of a stipulated judgment for "fraudulent concealment." He does testify that he did not give any thought to the bankruptcy proceeding or "consider what the settlement meant for dischargeability" when he consented to the terms.[11]

---

[11] Lane does deny liability for fraud in his declaration. He also cites the 2008 recession negatively affecting Armor-Lite and the construction industry generally. He also states the plaintiffs' changed their theory of the case during discovery in the state court litigation. He testifies that he felt he was under "enormous pressure" to agree to the settlement terms because of his medical condition and his fear he may suffer another stroke.

A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material if it might affect the outcome of the case." <u>Far Out Prods. v. Oskar</u>, 247 F.3d 986, 992 (9th Cir. 2001) (citing <u>Anderson</u>, 477 U.S. at 248-49.) Defendant's evidence raises neither a genuine nor material issue of fact. Settlements are reached for many reasons. The undeniable facts here are Lane, represented during the trial and settlement, made a calculated decision for rational reasons to agree to the settlement and stipulated judgment.[12] The dischargeability of the judgment was negotiated while this adversary proceeding was pending. He knew of his bankruptcy case and this adversary proceeding. He may not have thought about it when the settlement occurred but there is no evidence he was misled.

4. Issue preclusion policy analysis supports summary judgment.

"Even where the five threshold criteria for issue preclusion are met, a bankruptcy court must conduct an 'inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy' before applying issue preclusion." <u>Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)</u>, 615 B.R. 572, 582 (9th Cir. BAP 2020) (quoting <u>Khaligh v. Hadaegh (In re Khaligh)</u>, 338 B.R. 817, 824-25 (9th Cir. BAP 2006), <u>aff'd</u> 506 F.3d 956 (9th Cir. 2007)). "Three fundamental policies should be considered: 'preservation of the integrity of the judicial system,

---

[12] Lane received significant concessions from the plaintiffs under the settlement: a one year period before the judgment would be entered; a significant reduction in liability from $2.4 million to $1.5 million; plaintiffs' agreement not to take collection action against royalties from Lane's book; plaintiffs' waiver of attorney fees and costs against Lane incurred in defending a cross-complaint dismissed during the trial; each party bore their own fees and costs.

promotion of judicial economy, and protection of litigants from
harassment by vexatious litigation.'" Delannoy, 615 B.R. at 582
(quoting Lucido v. Superior Court, 51 Cal.3d 335, 343 (1990)); see
also Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367
B.R. 99, 103 (9th Cir. BAP 2007). These policies are furthered here
by finding issue preclusion.

   *Integrity of the judicial system* - One inquiry involved with this
policy is the prevention of inconsistent judgments. See Murray v.
Alaska Airlines, Inc., 50 Cal. 4th 860, 879 (2010). Ignoring or
diminishing the stipulated judgment here may lead to litigation that
would result in an inconsistent judgment. The settlement and judgment
here occurred after a lengthy trial and discovery process including a
dispositive motion. A court with jurisdiction accepted a settlement
resolution of a contentious dispute which included a judgment on a
specified cause of action. This was not a pre-petition resolution
with a vague agreement that a debt would not be dischargeable.
Rather, this stipulated judgment and settlement occurred while
parallel litigation in this court was pending. The parties recognized
that in their settlement document and stipulated judgment. An
inconsistent judgment entered by this court under these circumstances
undermines judicial integrity.

   Separate from risk of inconsistent judgments, defendant's
position to ignore the stipulated judgment supports exercise of
discretion to apply issue preclusion. Defendant had a full
opportunity to litigate any denials or defenses he had to the fraud
claim. The trial went on for 25 days before the stipulated judgment
was entered. Defendant stipulated to a judgment in favor of
plaintiffs for "fraudulent concealment" and for an order in the

bankruptcy court that the judgment is not dischargeable in his

previously filed bankruptcy action.  Doc. #141.  Defendant should not

stipulate to judgment mid-trial then essentially argue (after the

judgment has been found valid) the issue was never actually litigated

or necessarily decided, *when his decision to stipulate to judgment*

*ended that choice*.  If permitted here, then a party could continue a

shell game indefinitely.  A party could bamboozle the system by

agreeing to a stipulated judgment thereby precluding adverse findings.

At enforcement time, the crafty party would attempt to skirt the

judgment by arguing that the court never made the requisite findings.

This should not be countenanced.

The court is unpersuaded by Lane's claim he signed the settlement

under duress.  He testified he stipulated to the judgment (and

settlement) "under enormous pressure" caused by his fear of another

stroke or worse. Doc. #173.  He also claims his counsel and "other

witnesses" were notified of this.  His trial counsel advised him he

would likely have an adverse judgment against him.  He now claims that

neither his trial counsel nor the court properly explained the meaning

of the stipulated judgment being non-dischargeable.

First, the state trial court went to great pains to ask Lane if

he was under duress at the settlement hearing at least twice and Lane

twice said he was not.

Second, Lane waited seven months to ask the state court to vacate

the settlement.  The state court specifically found Lane competent to

enter into the agreement and stipulated judgment.  That finding was

upheld on appeal.

Third, even if neither of the above happened, Lane has not

established any material factual dispute.  Lane does not state the

Plaintiffs committed any wrongful act or wrongful threat to pressure

him into the settlement.  <u>See</u> <u>Sheehan v. Atlanta Int'l Ins. Co.</u>, 812

F.2d 465, 469 (9th Cir. 1987) (applying California law held no duress

absent either a wrongful act by the other party or lack of reasonable

alternative to the agreement).  Lane points to no wrongful act by the

Plaintiffs.  Nor has Lane provided evidence Lane had no reasonable

alternative.  He received many concessions under the agreement.[13]

Fourth, neither Lane's trial counsel's advice nor lack of

bankruptcy expertise establish duress without evidence Plaintiffs knew

of the duress.  None has been provided.  <u>See</u> <u>Chan v. Lund</u>, 188 Cal.

App. 4th 1159, 1175 (2010) ("in general, duress must emanate from the

opposing party to an agreement, not one's own attorney, unless the

opposing party knows of the duress").  Lane has the burden of proof on

these issues.  <u>Fio Rito v. Fio Rito</u>, 194 Cal. App. 2d 311, 322 (1961).

He has not met the burden here.  Lane admitted his bankruptcy case was

not "on his mind" when he agreed to the settlement.  His subjective

lack of concern then cannot be raised now.  No evidence raises a

genuine factual issue whether Lane was misled about the impact of his

agreements.

*Promotion of judicial economy* - The record on this motion is over

1,000 pages.  The underlying state court litigation began a decade

ago.  This bankruptcy case has been pending for almost nine years.

The state court here used many resources over a lengthy period

resolving the dispute.  In addition to 25 trial days, Lane moved to

vacate the settlement which the state court denied.  That was affirmed

on appeal.  Lane opposed entry of the stipulated judgment on the same

grounds and that motion was denied and not appealed. Retrying these

---

[13] See footnote 12 above.

issues when there is a well-developed record establishing Lane's agreement to settlement terms and the stipulated judgment is wasteful.

Further, Lane's arguments that he did not commit fraud in the first place and that his mental capacity when he agreed to the settlement prevent issue preclusion here are unpersuasive.  First, the judgment concluded the litigation on the fraud issue.  Second, Lane's mental capacity has been thoroughly vetted by the trial court — twice — and the California Court of Appeal.  Lane's arguments ask this court to question how the state courts reached their decisions, an impermissible collateral attack on the judgment and the state courts' rulings.  Lopez, 367 B.R. at 106.

*Protection from harassment by vexatious litigation* - Lane had a full and fair opportunity to litigate the "fraudulent concealment" claim before the Superior Court, a tribunal with jurisdiction to render a final judgment.  The litigation lasted 10 years in state court and has been pending here almost as long.  Extensive discovery has been conducted.  Lane had notice of the issues at hand — much of the state court litigation was in the shadow of the bankruptcy proceeding.  Lane had every incentive to vigorously litigate the issue.  See Murphy v. Murphy, 164 Cal. App. 4th 376, 405 (2008). He did fervently litigate until the settlement was reached.  Requiring the plaintiffs to relitigate these issues here does nothing except needlessly multiply litigation.

Lane's arguments about the adequacy of his counsel preventing application of issue preclusion are unavailing.  Even if there were questions about the decisions made on his behalf — this court is not asking — that does not mean he lacked a full and fair opportunity to litigate all issues.  Also, it is axiomatic that there is no absolute

1  right to counsel in civil proceedings.  <u>Hedges v. Resolution Tr.</u>

2  <u>Corp.</u>, 32 F.3d 1360, 1363 (9th Cir. 1994).  Lane's dissatisfaction

3  with his counsel or the result of the settlement and stipulated

4  judgment does not weigh against applying issue preclusion here.

5  Dissatisfaction does not equate to denial of due process or give way

6  to the strong policy reasons supporting issue preclusion under these

7  facts.[14]

8

9                              **CONCLUSION**

10      Lane's unfortunate trek on the road to plaintiffs' exasperation

11  has reached a "T intersection."  Turning one way may lead to

12  resolution of this very long dispute.  Turning the other leads to

13  certain arbitrament of the sword.  The court is hopeful Lane takes the

14  correct road.

15      The motion for summary judgment is GRANTED.  Plaintiffs shall

16  submit an order granting the motion consistent with this ruling within

17  14 calendar days.  Plaintiffs shall also submit a separate judgment

18  consistent with the ruling.

19

20  **Dated:** Sep 10, 2020              **By the Court**

21

22

23                                       **René Lastreto II, Judge**
                                         **United States Bankruptcy Court**
24

25

26      [14] There is some evidence supporting the motion for summary judgment
    that Lane threatened further litigation against the plaintiffs
27  contemporaneously with his prosecution of the unsuccessful motion to vacate
    the settlement. See footnote 6 above.  Though not a finding here, that is
28  some evidence of plaintiffs' need for protection from repeated litigation.
    Further, Lane's arguments "denying" the commission of any fraud at this late
    stage bodes for continued wasteful litigation.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

Frank Lane
1133 Palo Alto
Tulare CA 93274

Brent M. Finch
23945 Calabasas Rd #115
Calabasas CA 91302

Carollynn H.G. Callari
One Rockefeller Plaza 10th Fl
New York NY 10020

Douglas A. Crowder
350 S Figueroa St #190
Los Angeles CA 90071

Gilad Berkowitz
350 S Figueroa St #190
Los Angeles CA 90071

Hamid R. Rafatjoo
1800 Avenue of the Stars, 12th Floor
Los Angeles CA 90067